UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
-------------------------------------------------------
AMERICAN CRUISE LINES, INC.,

        Plaintiff,

v.                                                               25-CV- _____

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO EXCESS
MARINE POLICY UMR/POLICY
NO. B0621MAMER003422,

        Defendants.
-----------------------------------------------------------

## COMPLAINT

      Plaintiff, American Cruise Lines, Inc., by its attorneys, Tisdale & Nast Law Offices, LLC, alleges, upon information and belief, as follows:

## THE PARTIES

      1.    Plaintiff American Cruise Lines, Inc. ("ACL" or "Plaintiff"), is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 741 Boston Post Road, Suite 200, Guilford, CT 06437.

      2.    At all material times, ACL was and still is the owner and operator of a fleet of modern excursion vessels including the riverboat M/V AMERICAN INDEPENDENCE.

      3.    Defendants, Certain Underwriters at Lloyds, London subscribing to Excess Marine Policy UMR/Policy No. B0621MAMER003422 ("Underwriters") are a consortium of insurers lead by Axis Insurance a/k/a Lloyd's Underwriting Syndicate No. 1686 AXS, ("Axis"). A list of the following insurers is included in Exhibit A to the Policy. Upon information and belief, all the

subscribing underwriters are foreign corporations with their principal places of business in foreign countries.

4. At all material times, Underwriters provided excess coverage pursuant to a Bumbershoot policy for, among other things, ACL's marine liabilities for $10 million excess of $5.0 million. ACL's primary insurer and first layer of excess insurer is non-party Travelers Indemnity Company ("Travelers").

## VENUE AND JURISDICTION

5. As described more fully below, this matter arises out of Underwriters' Reservation of Rights under the Bumbershoot policy issued to Plaintiff on the basis of alleged late notice of claim. Plaintiff seeks declaratory judgment confirming that notice of claim was properly and timely provided and that no material prejudice has been suffered by Underwriters in any event. This Court has jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201. Furthermore, the policy in question is a maritime contract and this dispute falls within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

6. The parties have contractually conceded to jurisdiction in the courts of the United States of America. Venue is proper in this Court based upon the Plaintiff's principal place of business.

## THE BUMBERSHOOT POLICY

7. On or about August 1, 2022, Underwriters issued Bumbershoot Policy No. B0621MAMER003422 ("Bumbershoot policy") for the period August 1, 2022 to August 1, 2023. It provided excess marine liability insurance for ACL and the AMERICAN INDEPENDENCE among other vessels. (Exhibit 1). The Bumbershoot policy insured, among other things, ACL's

excess marine liabilities between $5.0 million and $15.0 million including those protected by the Protection & Indemnity coverage provided by Travelers in the primary and first layer excess insurance. (A copy of Travelers' primary and first layer excess policies are attached hereto as Exhibit 2 and 3, respectively).

## UNDERLYING ACTION

8.  On June 23, 2023, Pat Gonzalez filed a Petition in the District Court of Harris County, Texas against ACL asserting claims under the Jones Act (46 U.S.C. § 30104) and/or the general maritime law of the United States arising out of an injury he allegedly sustained on or about March 26, 2023 as a member of the crew of the M/V AMERICAN INDEPENDENCE, a riverboat owned and operated by ACL. ("Texas Litigation"). Gonzalez alleged that he suffered a partial amputation of one of his legs as a result of the injury. (A copy of Pat Gonzalez's Original Petition is attached as Exhibit 4). Kean Miller, a Houston based law firm, was retained to defend ACL.

9.  On January 24, 2025, Kean Miller received a Settlement Demand letter from counsel for Pat Gonzalez demanding $120,000,000 in settlement of his claim. With the approval of ACL and Travelers, Kean Miller rejected the $120 million demand.

10.  Until the $120,000,000 demand was received, nothing provided in discovery or elsewhere in the Texas Litigation even hinted that Pat Gonzalez's claim could possibly involve Underwriters' $5.0 to $15.0 million layer.

11.  On April 10, 2025, ACL advised Underwriters of Gonzalez's suit and the $120 million settlement demand.

12.  On May 5, 2025, due to the magnitude of Gonzalez's settlement demand, Kean Miller filed a Petition for Exoneration from or Limitation of Liability pursuant to 46 U.S.C. §

30501 *et seq.* in the United States District Court for the Southern District of Texas ("Limitation Action") seeking to exonerate ACL from liability to Pat Gonzalez or, alternatively, to limit ACL's liability to the value of the AMERICAN INDEPENDENCE, $15,435,000.00.

13. In his Answer to and Claim in ACL's Limitation Action, Pat Gonzalez's counsel prayed that the Court dismiss the Petition due to ACL's failure to post security in the amount of the vessel's value.

14. If, when called upon to secure the surety company willing to post the *in rem* bond in the Limitation Action, Defendants persist with their ROR, Plaintiff will be greatly prejudiced in the defense of Gonzalez's claim and potentially irreparably harmed.

## **UNDERWRITERS' ROR**

15. On July 3, 2025, through their counsel Phelps Dunbar, LLC, Underwriters served ACL with a Reservation of Rights ("ROR") letter based on alleged late notice of claim, among other reasons (attached as Exhibit 5). As the basis for the late notice reservation in the ROR, Underwriters relied on Condition 12 in the preprinted London Underwriting Wording JL 2019/006 incorporated in the policy, specifically the following:

12. NOTICE OF OCCURRENCE

Written notice must be given to Underwriters within ninety (90) days through the persons named in Item 11 in the Declarations by or on behalf of the "Insured" whenever the "Insured" has information:

….

(b) of any "Occurrence" where any injury of the following type occurs:

….

(ii) major amputations (leg, arm, foot or hand….

……..

(ROR, p. 2).

16. By relying on Part II, Clause 12, Underwriters ignored other superseding insuring conditions in the policy as well as the underlying P&I policy terms which are incorporated in the Bumbershoot policy.

## RELEVANT BUMBERSHOOT AND P&I POLICY TERMS

17. In addition to the foregoing, the Bumbershoot policy provides the following relevant terms:

**Interest:** Bumbershoot Liability Insurance.

**Limit of Liability:** USD 10,000,000 any One Accident or Occurrence.

**Excess of:** Schedule of underlyings:

| Coverage | Limit | Carrier |
|---|---|---|
| Marine General Liability | $1,000,000 per occurrence $2,000,000 annual aggregate | Travelers |
| Auto Liability | $1,000,000 combined single limit | Travelers |
| Liquor Liability | $1,000,000 per occurrence | North American Capacity |
| 1st Excess (Auto, MGL, Liquor) | $4,000,000 per occurrence | Travelers |
| Protection & Indemnity | $5,000,000 per occurrence | Travelers |
| Vessel Pollution | $5,000,000 per occurrence | WQIS |
| EL | $1,000,000 per occurrence | American Longshore Mutual/ AEU |

Conditions: London Umbrella Wording JL 2019/006, **notwithstanding the provisions of this wording it is agreed to follow the underlying Protection & Indemnity and Vessel Pollution policies in all respects.** However excluding any ex-gratia payments.

General Conditions

>War and Terrorism Exclusion Clause NMA 2918
>Institute Radioactive Contamination, Chemical, Biological, Bio Chemical and Electromagnetic Weapons Exclusion Clause (10.11.03)
>CL 370 U.S.A. & Canada Endorsement for the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause. 10/11/03. USCAN B. 29/01/04.
>
>Marine Cyber Endorsement LMA 5403.
>Sanction Limitation and Exclusion Clause JL2010/005
>U.S. Terrorism Risk Insurance Act of 2002 as amended. New and Renewal Business Endorsement LMA5389.
>Communicable Disease Exclusion JL 2020-013.
>Institute Service of Suit Clause (U.S.A.) CL355A.

Choice of Law & Jurisdiction:   This insurance shall be governed by and construed in accordance with the laws of Connecticut and each party agrees to submit to the exclusive jurisdiction of the Courts of United States of America.

(emphasis added).

18. The pertinent provisions of the incorporated underlying P&I policy provide as follows:

**PROTECTION AND INDEMNITY CLAUSES**

>Warranted that in the event of any occurrence which could result in a claim under this policy the Assured promptly will notify this Company upon receiving notice thereof and forward to this Company as soon as practicable all communications, processes, pleadings or other legal papers or documents relating to such occurrence.

19. Based on the foregoing, Underwriters' ROR is unfounded and should be declared invalid.

**AS AND FOR A FIRST
CAUSE OF ACTION**

20. Plaintiff repeats and realleges each and every of the foregoing allegations contained in paragraphs 1 through 19 of this Complaint with the same force and effect as if fully set forth and repeated herein.

21. The Bumbershoot policy is a maritime contract to which federal maritime law is applicable.

22. The Bumbershoot policy provides that the law of the State of Connecticut shall apply. By law, choice-of-law provisions in maritime contracts are presumptively enforceable. Thus, Connecticut law should be applied to the interpretation of the Bumbershoot policy.

23. Gonzalez's claim in the Texas Litigation, as Underwriters acknowledged in the ROR letter, is governed by the P&I provisions of Travelers' policies as well as the Bumbershoot policy.

24. The Bumbershoot policy Conditions of Cover requires that, notwithstanding the London Underwriting Wording JL 2019/006 on which Underwriters rely, "it is agreed to follow the underlying Protection & Indemnity … polic[y] in all respects." (Exhibit 1, p. 2). As such, the P&I policy notice of claim provision supersedes that which is found at Condition 12 of the Bumbershoot policy preprinted form.

25. Moreover, even if it could be alleged that the two clauses create an ambiguity, which is denied, the typewritten condition cited above trumps the preprinted clause on which Underwriters rely.

26. Furthermore, under the applicable rules of contract construction, specific terms supersede general terms. As the more specific term, the Conditions of Cover Clause supersedes the more general preprinted clause on which Underwriters rely.

27. Finally, under the applicable law, even if it could be argued that more than one reasonable interpretation of these two clauses exists, which is denied, the ambiguity is to be construed in favor of the Plaintiff, the assured.

28. By virtue of the foregoing, Underwriters' ROR is based on a provision which is superseded by another notice of claim provision with which ACL fully complied.

29. ACL respectfully prays that this Court declare that any potential liability ACL may encounter to Gonzalez in the Texas Litigation, which is denied, is covered by Underwriters' Bumbershoot policy for liability in excess of $5.0 million but less than $15.0 million.

## AS AND FOR A SECOND CAUSE OF ACTION

30. Plaintiff repeats and realleges each and every of the foregoing allegations contained in paragraphs 1 through 29 of this Complaint with the same force and effect as if fully set forth and repeated herein.

31. Under Connecticut law, an insurer's obligation to indemnify or defend an insured may be discharged pursuant to the notice provisions of a policy only where there is: (1) an unexcused, unreasonable delay in notification by the insured, that (2) result[s] [in] material prejudice to the insurer. Underwriters bear the burden of proving, by a preponderance of the evidence, that they have been prejudiced by the Plaintiff's alleged failure to comply with a notice provision.

32. Regardless of which notice of claim provisions are employed, Underwriters have suffered no prejudice, let alone material prejudice, as a result of when notice was provided.

33. Plaintiff asks that this Court declare, even if it is determined that timely notice of claim was not provided to Underwriters, which is denied, Underwriters nonetheless have not suffered any material prejudice as a result of the delay.

34. By virtue of the foregoing, Defendants' ROR on the basis of late notice is unfounded and ineffective.

WHEREFORE, Plaintiff respectfully prays that this Court grant Plaintiff declaratory judgement (1) declaring Defendants' reservation of rights unfounded and invalid, (2) declaring that timely notice of claim was provided under the Bumbershoot policy, (3) declaring that Underwriters suffered no material prejudice as the result of Plaintiff's alleged late notice of claim, (4) declaring that Defendants should protect and indemnify Plaintiff in the event Plaintiff is found liable to Pat Gonzalez, or a reasonable settlement is agreed with Pat Gonzalez, which implicates Defendants' Bumbershoot policy, and (5) that this Court grant Plaintiff such other and further relief, including costs and counsel fees, as to this Honorable Court appears just and proper.

Dated: July 17, 2025
      Southport, CT

Attorneys for the Plaintiff,
American Cruise Lines, Inc.,

    /s/ *Thomas L. Tisdale*
Thomas L. Tisdale
Tisdale & Nast Law Offices, LLC
10 Spruce Street
Southport, CT 06890
Tel:    203 254 8474
Fax:   203 254 1641
*ttisdale@tisdale-law.com*